# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

| | |
|---|---|
| **KENNETH RAY BUSKIRK,** | |
| **Plaintiff,** | |
| v. | Civil Action No. 3:15-03503 |
| **DANIEL WILES,** *et al.*, | |
| **Defendants.** | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary Judgment (Document No. 46), filed on December 4, 2016. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 49.) Plaintiff filed his Response in Opposition on December 22, 2016. (Document No. 51.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion for Summary Judgment should be denied.

## PROCEDURAL BACKGROUND

On March 24, 2015, Plaintiff, acting *pro se,* filed his Motion to Proceed Without Prepayment of Fees and Complaint claiming entitlement to relief pursuant to Title 42 U.S.C. § 1983.[1] (Document Nos. 1 and 2.) In his Complaint, Plaintiff alleges that Defendants violated his rights under the Fourth Amendment by using excessive force during his arrest. (Document No. 2.)

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

As relief, Plaintiff requests monetary compensation and "for the persons involved to be punished in some way, shape, or form." (Id., p. 5.) On April 2, 2015, Plaintiff filed a Motion to Amend Complaint and his proposed Amended Complaint. (Document Nos. 4 and 4-1.) In his Amended Complaint, Plaintiff states that "all Defendants are state actors acting under color of State law" and "all Defendants are being sued in their personal and professional capacities." (Document No. 4-1.)

By Order entered on April 16, 2015, United States Magistrate Judge Cheryl A. Eifert granted Plaintiff's Motion to Proceed Without Prepayment of Fees, directed the Clerk to issue a summons for each named defendant, directed the United States Marshals Service to serve the Summons and a copy of Plaintiff's Complaint and Amended Complaint upon each Defendant, and granted Plaintiff's Motion to Amend. (Document No. 5.) On July 2, 2015, Defendants filed their Answer. (Document No. 18.) Also on July 2, 2015, the above civil action was transferred from Judge Eifert to United States Magistrate Judge Dwane L. Tinsley for total pretrial management and submission of proposed findings of fact and recommendations for disposition. (Document No. 19.) By Order entered on June 3, 2016, Judge Tinsley set forth deadlines for the completion of discovery and the filing of dispositive motions. (Document No. 30.) Due to a conflict, the above civil action was then transferred from Judge Tinsely to the undersigned for total pretrial management and submission of proposed findings of fact and recommendations for disposition. (Document No. 32.) Plaintiff participated in discovery and filed Motions to Compel, some of which were granted in part. (Document No. 42, 48, 52, 55.)

On December 5, 2016, Defendants filed their Motion for Summary Judgment and Memorandum in Support. (Document Nos. 46 and 47.) Defendants argue that Plaintiff's claims should be dismissed because "Plaintiff cannot demonstrate that Defendants used an unreasonable

amount of force against him" (Id., pp. 8 – 10.) As Exhibits, Defendants attach the following: (1) A copy of the "Huntington Police Department Field Notes" prepared by D. Wiles on December 14, 2014 (Document No. 47-1.); (2) A copy of a fifteen count Indictment filed in the Circuit Court of Cabell County charging Plaintiff with Destruction of Property, Petit Larceny, Entry of a Building Other than a Dwelling, Malicious Assault on a Government Official, Fleeing in a Vehicle, Obstructing a Police Officer, and Fleeing in a Vehicle with Reckless Indifference (Document No. 47-2, pp. 1 – 5.); (3) A copy of the Sentencing Order as filed in the Circuit Court of Cabell County on November 19, 2015, reflecting that Plaintiff plead guilty to "Destruction of Property," "Entry of a Building Other than a Dwelling," "Malicious Assault on a Government Official," and "Transferring Stolen Property" (Id., pp. 6 – 7.); (4) A copy of the "Incident Summary: Huntington Police Department Use of Force Report" concerning Officer Robert Black (Document No. 47-3.); (5) A copy of Plaintiff's Complaint as filed in this Court (Document No. 47-4.); (6) A copy of the "Huntington Police Department Field Notes" prepared by R. Black on December 14, 2014 (Document No. 47-5.); and (7) A copy of Officer Wiles' Affidavit (Document No. 47-6.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on December 6, 2016, advising him of the right to file a response to the Defendants' Motion for Summary Judgment. (Document No. 49.) On December 22, 2016, Plaintiff filed his Response in Opposition. (Document No. 51.) Plaintiff contends that Defendants are not entitled to summary judgment because there are material issue of fact in dispute. (Id.) As an Exhibit, Plaintiff attaches a copy of his Affidavit. (Document No. 51-1.)

## SUMMARY OF EVIDENCE

On December 14, 2014, Plaintiff was attempting to break into vending machines at Madison Manor. (Exhibits A & B.) Officer Wiles responded to a report of an attempted break-in

at Madison Manor and found Plaintiff exiting Madison Manor with a crowbar.[2] Officer Wiles states that when he observed Plaintiff throw the crowbar into the bushes, he gave Plaintiff an order to stop and place his hand on his head. At this time, Officer Wiles states that Plaintiff attempted to flee the scene of the crime. Plaintiff, however, states that Officer Wiles directed Plaintiff to "come to him" and when Plaintiff complied, Officer Wiles swung his police baton at Plaintiff's head. Plaintiff explains that he "threw [his] left arm up to block the blow, then took off running to [his] car about a block away." Plaintiff disputes that Officer Wiles gave "any order like 'you're under arrest, turn around, ect.'" Plaintiff further states that Officer Wiles shot him with a taser as he was fleeing, but the prongs did not pierce Plaintiff's skin. Plaintiff and Officer Wiles appear to agree that Plaintiff made it to his car that as parked a couple of blocks away and Officer Wiles used his baton to break the driver's side window. Officer Wiles, however, claims that Plaintiff's left arm was struck with the baton as Plaintiff was attempting flee in the car. Officer Wiles claims that Plaintiff fled the scene in a reckless manner placing the public at risk. It is undisputed that Plaintiff drove to a Sheetz's gas station where he exited the vehicle and again began to flee on foot. Events following Plaintiff's flight at the Sheetz's gas station are disputed. Officer Black contends that he confronted Plaintiff during the flight, Plaintiff resisted arrest, and Officer Black used "appropriate non-lethal force to subdue Plaintiff." Plaintiff, however, contends that as he was fleeing due to fear and Officer Wiles intentionally struck Plaintiff with his police car causing Plaintiff to fall face first onto the ground. Plaintiff states that officers jumped on his back and started punching him even though Plaintiff was yelling "I am not resisting." Plaintiff states that he was hit by officers until he was knock unconscious.

    In Plaintiff's verified Complaint (Document No. 1) and Affidavit (Document No. 51-1),

---

[2] Plaintiff does not dispute that he had a crowbar.

Plaintiff contends that on December 14, 2014, he exited Madison Manor and Officer Wiles directed Plaintiff to "come to him." (Document No. 1, p. 4.); See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purpose, when the allegations contained therein are based on personal knowledge.")(emphasis in original)(citing Davis v. Zahradnick, 600 F.2d 458, 459-60 (4th Cir. 1979)). Plaintiff alleges that Officer Wiles "did not give any order like 'you're under arrest, turn around, ect.'" (Id.) Plaintiff states that he complied with Officer Wiles' order. (Id.) Plaintiff, however, states that when he approached Officer Wiles, "he took his night stick and swung at my head." (Id.) Plaintiff explains that he "threw [his] left arm up to block the blow, then took off running to [his] car about a block away." (Id.) Plaintiff contends that Officer Wiles pursued him and shot him twice with a taser. (Id.) Plaintiff acknowledges that the prongs from the taser did not pierce his skin and had no effect on him. (Id.) Plaintiff states that he made it inside his car, but Officer Wiles "started hitting the driver's side window with his stick like he was crazy or something." (Id., p. 5.) Plaintiff asserts that Officer Wiles busted the car window just as Plaintiff was pulling away. (Id.) Plaintiff states that he "made it to Sheetz's gas station in the West End of Huntington, got out of the car and took off running again on foot [be]cause I was really scared." (Id.) Plaintiff contends that he ran about 30 feet and Officer Wiles hit him with his police car. (Id.) Plaintiff contends that his left leg was impacted so hard that his shoe was thrown from his foot and he fell face first on the ground. (Id., pp. 5 – 6.) Plaintiff contends that as he was lying on the ground, police officers "jumped on [his] back and started punching [him] in the ribs and kidney." (Id., p. 6.) Plaintiff alleges that during this time, Plaintiff was yelling "I am not resisting." (Id.) Plaintiff claims that when other officers arrived, those officers also started hitting Plaintiff. (Id.) Plaintiff alleges that the officers' conduct caused him to be "knocked out." (Id.) Plaintiff alleges that he

"got [his] senses back kind of when they picked [him] up and put [him] against the cop car." (Id.) Plaintiff claims that although he was "pouring the blood from [his] head," the officers took him to the parking lot of the police department before calling an ambulance. (Id.) Plaintiff states prior to the arrival of the ambulance, Plaintiff started vomiting due to his injuries. (Id.) Plaintiff states that he was transported and treated at the Cabell Huntington Hospital. (Id.) Plaintiff alleges that he was treated for the following: a broken left arm, laceration to the back of the head that required ten staples, bruised ribs and kidney, and lacerations to the face. (Id.)

In Defendant Wiles' sworn affidavit, he states that "the narrative set forth in [his] Huntington Police Department Field Notes is true and accurate, and [he] incorporates herein that narrative as if fully set forth herein." (Document No. 47-6.) In the "narrative" of Defendant Wiles' "Huntington Police Department Field Notes," Defendant Wiles states that he responded to Madison Manor on December 14, 2014 based on a report that a male with a crowbar was breaking in soda machines. (Document No. 47-1.) Once on scene, Defendant Wiles states that the observed Plaintiff exit the building carrying what appeared to be a crowbar and Plaintiff immediately threw the crowbar into the bushes. (Id.) Defendant Wiles states that he ordered Plaintiff "to stop and place his hands on his head," but Plaintiff "pauses and begins to place his hands up in the air and then flees on foot." (Id.) Defendant Wiles asserts that he ordered Plaintiff to stop, but Plaintiff disregarded the verbal command. (Id.) While running behind Plaintiff, Defendant Wiles explains that he utilized his taser by deploying it at Plaintiff's mid-back. (Id.) Defendant Wiles states that the taser was not effective and he could see the prong from the taser hanging off Plaintiff's sweatshirt. (Id.) Defendant Wiles states that he immediately fired the taser a second time, but it was again ineffective. (Id.) Defendant Wiles asserts that as Plaintiff continued to flee, he again ordered Plaintiff to stop. (Id.) Defendant Wiles states that "at this time, I have extended my asp

baton." (Id.) Defendant Wiles asserts that Plaintiff ran to and opened the door of a car parked at the West Tenampa Restaurant. (Id.) Defendant Wiles states that as Plaintiff was opening the car door, he attempted to strike Plaintiff "in the left arm of the body but strikes the frame of the car door while it is closing." (Id.) Defendant Wiles states that Plaintiff then "begins fumbling to get the keys in the ignition." (Id.) Defendant Wiles asserts that "[d]ue to the lighting and dirt/debris on the window, [he did not have] a clear visual of the suspect who ha[d] now entered his own environment and one in which the presence of weapons [was] unknown." (Id.) Defendant Wiles states that he struck the driver's side window three times with his baton, and the window broke on the third strike. (Id.) At this time, Defendant Wiles asserts that he could hear the car attempting to start and he began striking Plaintiff in the left forearm with his baton. (Id.) Defendant Wiles states that he again gave Plaintiff orders to desist his evasive actions, but Plaintiff leaned over the right side of steering while trying to put the car in drive. (Id.) Defendant Wiles states that he continued to strike Plaintiff aiming for his left forearm. (Id.) Defendant Wiles explains that Plaintiff got the vehicle started, turned it hard to the left, and accelerated. (Id.) Defendant Wiles contends that the car was spinning and when it caught traction, Defendant Wiles was struck in the left knee with the vehicle. (Id.) Defendant Wiles states that he attempt to run behind the vehicle but he was unable to keep up due to the speed and erratic movements. (Id.) During the attempted chase, Defendant Wiles states that he heard a vehicle approaching from behind him and it was Defendant Black. (Id.) Defendant Wiles states that Defendant Black then gave chase to Plaintiff. (Id.)

In Defendant Black's "Huntington Police Department Use of Force Report" and "Huntington Police Department Field Notes, Defendant Black states that on December 14, 2014, he received a call that someone was attempting to break into vending machines at Madison Manor. (Document No. 47-3 and 47-5.) Defendant Black contends that Plaintiff was a suspect in several

7

similar crimes in the area and Plaintiff had 11 warrants for his arrest involving three felonies and eight misdemeanors. (Id.) Defendant Black states that when he arrived on scene, he meet with the caller who advised that the building was locked and a key/code was necessary to get into the building. (Id.) At this time, Defendant Black contends that he observed Defendant Wiles chasing a white male. (Id.) Defendant Black states that he "jumped back into [his] cruiser" drove to the location that Defendant Wiles advised they were headed towards. (Id.) Defendant Black asserts that as he arrived at the alley between Jefferson and Madison Avenue, he observed a car swerve towards Defendant Wiles knocking him backwards and then the car speed off. (Id.) Defendant Black states that he began to chase Plaintiff with his blue lights and siren on. (Id.) Defendant Black asserts that Plaintiff ran a stop sign and red light during the high speed chase before turning into the Sheetz's gas station parking lot. (Id.) Upon turning into the Sheetz's parking lot, Defendant Black states that Plaintiff exited his vehicle and attempted to flee on foot. (Id.) Defendant Black pursued Plaintiff on foot and caught him on the 1800 block of Washington Avenue, just North of Sheetz. (Id.) Defendant Black asserts that Plaintiff fell down, and Defendant Black "jumped on him" as Plaintiff attempted to stand back up. (Id.) Defendant Black explains that he attempted to grab Plaintiff's arms, but his arms were underneath his body. (Id.) Defendant Black states that he "delivered 3 to 4 knee strikes to his left side and was able to free his left arm from under his body, but he continued to conceal his right arm under his body." (Id.) Defendant Black states that "while [he] performed a wrist lock on [Plaintiff's] left arm, [Defendant Black] punched him in the mid-back 3 to 4 times, but was unable to free [Plaintiff's] arm." (Id.) Defendant Black states that he held Plaintiff's left arm until other officers arrived on scene to assist him in freeing Plaintiff's right arm and "forcibly cuffing him." (Id.) Defendant Black states that Plaintiff was treated by EMS at the police department headquarters and then transported to Cabell Huntington Hospital for further

treatment. (Id.)

## STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658,

685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

1. **Excessive Force:**

In their Motion for Summary Judgment, Defendants argue that Plaintiff's claim of excessive force should be dismissed because "Plaintiff cannot demonstrate that Defendants used an unreasonable amount of force against him." (Document No. 47, pp. 8 – 11.) Defendants first argue that "significant facts in this case led officers to reasonably believe that Plaintiff was a threat and/or likely to flee arrest." (Id., p. 9.) Defendants contends that Plaintiff's presence at the scene with possession of a crowbar and a report of a break-in was suspicious. (Id.) Defendants argue that "[a]fter Plaintiff encountered a police officer, he fled the scene and Plaintiff's rendition of the discreet facts of the initial encounter has been thoroughly disproven." (Id., pp. 9 – 10.) Specifically, Defendants conclude that "Plaintiff's rendition of the facts cannot be true" based on the following:

> [Plaintiff] contends that Officer Wiles <u>first</u> used his ASP baton <u>before</u> using his taser. An ASP baton is an extendible baton that can be extended by a technique requiring a partial swing and 'flick' of the writ. <u>See</u> Affidavit of Officer Wiles, attached hereto and incorporated herein as Exhibit F. To collapse an ASP baton after it is extended, it must be struck on a hard surface; it cannot be re-holstered unless it is subsequently collapsed. Exhibit F. For Plaintiff's contention to be true, Officer Wiles would have been required to extend his baton to strike Plaintiff, then collapse and re-holster his baton (because Plaintiff admits that Officer Wiles subsequently used it on his vehicle), before drawing, aiming, and firing his taser. Plaintiff necessarily contends that Officer Wiles took all these steps as Plaintiff was fleeing the scene, but nevertheless, remained close enough to hit Plaintiff with the taser prongs. This is not possible. Exhibit F.

(Id., pp. 5 – 6.) Defendants argue that Defendant "Wiles had to consider the safety of the neighborhood residents." (Id., p. 10.) Defendants contend that Plaintiff exacerbated "[a]ny perceived threat to public safety, and the officer's own" safety, by fleeing in a vehicle. (Id.)

10

Defendants argue "Plaintiff worsened the situation for himself when he took control of the interior of his vehicle; there was no way for the officers to be sure that Plaintiff did not have a weapon." (Id.) Thus, Defendants claim that it was not an unreasonable response for Defendant Wiles to "use non-deadly force in an attempt to apprehend the suspect and neutralize the perceived threat and flight." (Id.) Finally, Defendants assert that the extent of Plaintiff's injuries (broken arm and assorted cuts/bruises) do not demonstrate the use of unreasonable force. (Id.) Defendants conclude that the officers' actions did not violate the Fourth Amendment because "[c]onsidering the events as they must have appeared to the officers, the decision to subdue the Plaintiff was certainly not unreasonable." (Id.)

In Response, Plaintiff argues that he disputes Defendants' versions of events. (Document No. 51, p. 6.) Specifically, Plaintiff first disputes Defendants' claim that Defendant Wiles gave Plaintiff a direct order to stop and place his hands on his head, at which time Plaintiff fled the scene. Second, Plaintiff disputes that he resisted arrest after exiting his vehicle in the Sheetz's parking lot. Plaintiff states that Defendant Wiles struck Plaintiff with his police car as Plaintiff was attempting to flee on foot, and while Plaintiff was laying on the ground yelling that he was not resisting arrest, officers began beating and kicking him. (Id., p. 2.) Third, Plaintiff argues that Defendants' assertion that a baton must be struck on a hard surface to collapse "does not prove that Plaintiff is misremembering the incident or misleading the Court." (Id., pp. 2 – 3.) Finally, Plaintiff asserts that "the totality of the circumstances in this case do NOT justify the type of seizure effectuated by the Defendants, and the Plaintiff believes that a jury would agree." (Id.)

The Fourth Amendment prohibits unreasonable seizures, which includes the right to be free of "seizures effectuated by excessive force." Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006). Courts analyze whether an officer has used excessive force under a standard of objective

11

reasonableness. Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); also see Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003)(force is excessive when it exceed the bounds of "objective reasonableness"). An officer's subjective intent or motivation is irrelevant. Id. Courts must consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "[A] Court must focus on the moment the force is employed." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011); also see Graham, 490 U.S. at 397, 109 S.Ct. 1865(Courts must make "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving"). "Evaluating the reasonableness of the officer's actions 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake.'" Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015)(citing Graham, 490 U.S. at 396, 109 S.Ct. 1865). In assessing the reasonableness of the force, a Court should "view it in full context, with an eye toward the proportionality of the force in light of all the circumstances." Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005); also see Tennessee v. Garner, 471 U.S. at, 8 – 9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)(Courts should decide "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure"). Giving "careful attention to the facts and circumstances of each particular case," Courts should consider the following factors: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Smith, 781 F.3d at 101(citing Graham, 490 U.S. at 396, 109 S.Ct. 1865.).

      The undersigned finds that there are genuine issues of material fact. As discussed above in

the "Summary of Evidence," the version of events stated by Plaintiff and Defendants differ. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of judge . . . ruling on a motion for summary judgment.") These differences in fact are genuine issues of material fact. Specifically, Plaintiff and Defendants disagree as to the facts surrounding Plaintiff's initial contact with Defendant Wiles. Plaintiff contends that Defendant Wiles unjustifiably struck Plaintiff with his baton when Plaintiff complied with his order to "come here." Defendant Wiles, however, states that Plaintiff fled the scene when he ordered Plaintiff to stop and put his hand on his head. Defendant Wiles explains that he struck Plaintiff in the arm with the baton when Plaintiff was attempting to flee in a vehicle. The parties also disagree about the events occurring in the Sheetz's parking lot. Plaintiff contends that once he was fleeing on foot, Defendant Wiles struck him with his police car. Defendants, however, contend the immediate events following Plaintiff's flight from the vehicle involved only Defendant Black's act of jumping onto Plaintiff's back after Plaintiff had fallen to the ground. Thus, the foregoing constitutes genuine issues of material fact. See Anderson, 477 U.S. at 248, 106 S.Ct. at 2510(An issue of material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")

Viewing the facts in a light most favorable to Plaintiff, a jury could reasonably find that the degree of force used by Defendants was objectively unreasonable. Concerning the first Graham factor, the severity of the crime at issue, the undersigned finds this factor weighs strongly in favor of Plaintiff. Plaintiff was suspected of breaking into vending machines. See Jones, 325 F.3d at 528(Use of force in the absence of criminal conduct, or when the criminal offense is minor, must receive particular scrutiny under the *Graham* factors). There was no indication or allegation that

13

Plaintiff used a means of violence during his alleged efforts to break into vending machines. Although Plaintiff had eleven arrest warrants (three for felony charges and eight for misdemeanor charges), there is no indication or allegation that the warrants involved violent offenses or that Plaintiff had a history of violence. Thus, the first Graham factor weighs in favor of Plaintiff as the act of breaking in vending machines (destruction of property and entering a building other than a dwelling house) is not a severe crime.

Considering the second Graham factor, whether Plaintiff posed an immediate threat to the safety of the police or others, weighs in favor of Plaintiff. Viewing the facts in a light most favorable to Plaintiff, there was no need for the initial application of force by Defendant Wiles at Madison Manor. Plaintiff states in his Affidavit and verified Complaint that when Defendant Wiles saw Plaintiff exit the building, Defendant Wiles instructed Plaintiff to come to him. Although there is evidence that Plaintiff had a crowbar when he exited the building, it is undisputed by Defendants that Plaintiff immediately threw the crowbar in the bushes upon seeing Defendant Wiles. When Plaintiff complied and approached Defendant Wiles, Plaintiff states that Defendant Wiles swung his baton at Plaintiff's head. According to Plaintiff's version of events, Defendant Wiles used force against Plaintiff a second time after Plaintiff led Defendant Wiles and Black on a short, high speed car chase, where one stop sign and one red light was run. The car chase ended at Sheetz's parking lot when Plaintiff exited his vehicle and again began to flee on foot. After Plaintiff begun fleeing unarmed and on foot, Defendant Wiles struck Plaintiff with his police car. There was no apparent threat to officers or the public because Plaintiff was again fleeing on foot and Defendant Black was in close foot pursuit. See Waterman, 393 F.3d at 481("Force justified at the beginning of an encounter is not justified even second later if the justification for the initial force has been eliminated.") The impact from the police car allegedly knocked Plaintiff face first onto the ground.

After Plaintiff was knocked face first onto the ground, Defendants jumped on top of Plaintiff and begun hitting him until he was knocked unconscious. Defendants argue the use of force was necessary because they were unable to view Plaintiff's hands and were concerned that he might possess a weapon. Defendants do not state that Plaintiff was saw in possession of a weapon. Thus, the threat of Plaintiff possessing a weapon was minimal. Viewing the facts in a light most favorable to Plaintiff, this is a case where the initial use of force was unjustified and the continued use of force was excessive. Although Plaintiff fled the scene in a vehicle at high speeds and failed to obey traffic signals, the threat possessed by Plaintiff had ceased at the time additional force was used upon Plaintiff. Plaintiff was fleeing, unarmed on foot when additional force was used. Thus, the second Graham factor weighs in Plaintiff's favor as initial force was used upon Plaintiff when he posed no threat and additional force was used when Plaintiff posed a minimal threat.

A consideration of the third Graham factor, whether Plaintiff actively resisted arrest or attempted to evade arrest by flight, weighs in Plaintiff's favor. Viewing the facts in a light most favorable to Plaintiff, Defendant Wiles used force against Plaintiff before any arrest was attempted. The initial use of force by Defendant Wiles escalated the situation causing Plaintiff to flee the scene. Although Plaintiff was fleeing on foot at the time additional forced was used, the facts presented by Plaintiff indicate that the degree of force used was excessive. Defendant Wiles struck Plaintiff with his police car when Plaintiff was fleeing on foot and Defendant Black was closely approaching Plaintiff on foot. A reasonable officer in the same circumstances would not have concluded that striking an unarmed suspect fleeing on foot with a police car was a justifiable degree of force. Especially, where another officer was in close foot pursuit. After being knocked to the ground by the impact of the police car, Defendants continuously hit and kicked Plaintiff until he was knocked unconscious. Under Plaintiff's version of events, Defendants used the above force

when Plaintiff was lying face first on the ground, with a broken arm, stating that he was not resisting. Defendant Black does not dispute that he jumped on Plaintiff's back and hit Plaintiff in the ribs and back. (Document No. 47-3, p. 1.) Defendant Black contends force was necessary because Plaintiff's arms were located under his body. Even assuming slight resistance from Plaintiff to keep his arm under his body, a jury could find Defendants used excessive force by continuously hitting and kicking Plaintiff until he was knocked unconscious. See Smith v. Ray, 781 F.3d at 103(finding plaintiff's slight resistance to keep her arm under her body while on the ground so she could breathe, to be insufficient to justify the officer's decision to repeatedly punch plaintiff until her ribs were broken).

Viewing the Graham factors with the totality of the circumstances, a jury could find that the degree of forced used by Defendants was not objectively reasonable. Under Plaintiff's version of events, the severity of the alleged crime was minor and non-violent, Plaintiff posed no immediate threat to the safety of officers or the public, and Plaintiff was not actively resisting or attempting to evade arrest by flight at the time Defendant Wiles initially used force. Defendant Wiles' initial use of force escalated the situation causing Plaintiff to flee on foot. Plaintiff eventually made his way to his vehicle. As Plaintiff pulled away, Defendant Wiles broke the driver's side window and Plaintiff hit Defendant Wiles' knee with the car.[3] A short, high speed car chase ensued where one stop sign and one red light was run. The car chase ended at the Sheetz's parking lot where Plaintiff exited his vehicle and fled on foot. After the threat of the high speed chase had ceased, Defendant Wiles struck Plaintiff with his police car as Plaintiff was fleeing on foot. Defendant Black, who was in close foot pursuit, jumped onto Plaintiff's back and began

---

[3] The undisputed record reveals that the impact to Defendant Wiles' knee was minimal. Defendant Wiles's report indicates that he only suffered bruising to his knee.

16

hitting him as he laid face first on the ground with a broken arm. Although Plaintiff was yelling that he was "not resisting," all Defendants joined Defendant Black and continuously hit and kicked Plaintiff until he was knocked unconscious. Even assuming all Defendants were aware that Plaintiff had several warrants for his arrest, there was no indication that any of the warrants involved crimes of violence or that Plaintiff had a history of violence. A jury, therefore, could find that Defendants used excessive force. Accordingly, it is respectfully recommended that Defendants' Motion for Summary Judgment be denied.

**2.     Qualified Immunity:**

In their Motion for Summary Judgment, Defendants also argue that Plaintiff's excessive force claim is barred against all of the Defendants by the doctrine of qualified immunity. (Document No. 47, pp. 7 - 11.) Specifically, Defendants argue that they are entitled to qualified immunity because "the facts on the record are insufficient to demonstrate a constitutional violation." (Id.)

In Response, Plaintiff argues that Defendants are not entitled to qualify immunity. (Document No. 51, p. 3.) Plaintiff again claims that there are issues of material fact. (Id.) Plaintiff asserts that "Defendants' version of the events differ from the Plaintiff's" and "Plaintiff's version of the event do NOT provide the Defendants with immunity." (Id.) Plaintiff explains that his version of events show the following: (1) Plaintiff "was attacked initially, which caused him to flee;" and (2) "Once Plaintiff was subdued, officers CONINTUED to inflict UNNECESSARY force with the intent of inflicting sadistic/malicious punishment." (Id.)

Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to

17

responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In determining the validity of a qualified immunity defense, the Court should be guided by a two-prong test: (1) whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and (2) whether that right was clearly established at the time of the purported violation. Id. The sequence of the steps is immaterial following Pearson. The Court may exercise discretion in deciding which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Cooper v. Sheehan, 735 F.3d 153, 158 *4th Cir. 2013)(internal quotation marks and citations omitted).

In the instant case, Defendants argue they are entitled to qualified immunity because Plaintiff cannot establish that Defendants violated his constitutional rights. Defendants appear to acknowledge that the Fourth Amendment right to be free from excessive force was clearly established at the time of the allegation violation. Defendants, however, argue that "the facts on the record are insufficient to demonstrate a constitutional violation." Defendants explain that "Plaintiff cannot demonstrate that Defendants used an unreasonable amount of force against him." (Id.) As explained above, the undersigned has concluded there are issues of material fact regarding Defendants' use of force upon Plaintiff. For the reasons explained above, the undersigned finds

18

that when viewing the facts in a light most favorable to Plaintiff, Plaintiff could establish a violation of his Fourth Amendment right to be free from excessive force. When both the resolution of the qualified immunity question and the case itself depends upon a determination of what actually happened, summary judgment on grounds of qualified immunity is not proper. Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995); Hinojos v. Bowers, 2015 WL 4878812, * 8 (D.S.C. Aug. 14, 2015)(citations omitted)("[T]he court holds that there is a genuine issue of material fact as to whether [the defendant] used excessive force against [plaintiff]; therefore, the court cannot determine at the summary judgment phase that [the defendant's] actions were objectively reasonable for purposes of granting qualified immunity.") The undersigned, therefore, respectfully recommends that Defendants' Motion for Summary Judgment be denied.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Defendants' Motion for Summary Judgment (Document No. 46).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 28, 2017.

_____
Omar J. Aboulhosn
United States Magistrate Judge